Jeremy C. Johnson, Bar #025203
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue
Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-4453
Facsimile: (602) 200-7868
jjohnson@jshfirm.com
Attorneys for Petitioner
SmileDirectClub, Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| SmileDirectClub, LLC | ) |
| Petitioner, | ) CASE NO. MC-21-21-PHX-DLR |
| v. | ) **SMILEDIRECTCLUB, LLC'S** |
| | ) **REPLY IN SUPPORT OF ITS** |
| Align Technology, Inc. | ) **MOTION TO ENFORCE SUBPOENA** |
| | ) **TO ALIGN TECHNOLOGY, INC.** |
| Respondent. | ) |

Nothing in Align Technology, Inc.'s ("Align") Opposition to SmileDirectClub, LLC's ("SDC") Motion to Enforce Subpoena provides a basis to allow Align to escape the production of documents. Throughout the discussion leading up to the filing of the Motion, and again in its Opposition, Align fails to acknowledge that it has refused to agree to search for or produce a single document, and it feigns ignorance about its deep connection to the Provider Plaintiffs in the *Ciccio* matter and the direct correlation between the documents requested by SDC and its claims and defenses in that case. Most obviously, Align is not only SDC's competitor, but ***all*** of the Provider Plaintiffs sell clear aligners and two of the three[1] heavily advertise that they sell Invisalign® clear aligners. Indeed, Dr. Joseph Ciccio

---

[1] Dr. Kapit (who calls his practice "Big Boca Smiles") proclaims that he has been a "Preferred Invisalign Provider" since 2014 (https://www.bigtoothboca.com/index.php?p=396205); Dr. Ciccio boasts that he is a "Platinum Invisalign Provider" (https://www.nyorthodocs.com); and Dr. Raj (Alamo

9425656.1

highlights that he is on the Invisalign® "faculty" and his Invisalign® status as an "Elite Provider" as the crowning achievement on his website, advertising that he has "successfully treated hundreds of patients" with Invisalign®:[2]



And Align's entanglement with the issues on this case does not end with the three named Provider Plaintiffs. The class that the Provider Plaintiffs purport to represent no doubt will include many of the 102,000 "active Invisalign trained doctors" that Align touts

---

Ranch Orthodontics) advertises that he offers clear aligner treatment, though it is unclear what brand he sells (https://www.alamoranchorthodonticssa.com/treatments/).
[2] http://www.cicciodemarestorthodontics.com/meet-dr-joseph-ciccio.php (indications and call-out added).

9425656.1

in its 2020 Annual Report,[3] each of whom has a direct pecuniary interest in denigrating SDC and promoting Invisalign® over SDC's clear aligner treatment.

Moreover, the Provider Plaintiffs' claims that SDC's clear aligner treatments is inferior and below the required "standard of care" (*see, e.g.*, Amended Complaint, Doc. No. 36, at ¶¶ 80, 85-88, 90-91,93, 98-99) mirror those made by Align in various forms, including most recently in its 2020 Annual Report (p. 10) where Align differentiates itself from SDC as:

> [D]irect-to-consumer ("DTC") companies that provide clear aligners using a remote teledentistry model requiring little or no in-office care from trained and licensed doctors, and doctors themselves who can manufacture custom aligners in their offices using modern 3D printing technology. Unlike our DTC competitors, we are committed to doctors being at the core of our business strategy, and Invisalign Treatment requires a doctor's prescription and an in-person physical examination of the patient's dentition before treatment can begin.[4]

In that very important way, Align is not merely a third-party, but its products and services—including comparisons between the safety and efficacy of its clear aligner treatment and SDC's—are at the heart of the Provider Plaintiffs' claims in this case. In defending its blanket objections and complete refusal to produce—or search for or even quantify the supposed burden of producing—even a single document, Align even takes the untenable the position that unprivileged communications it had with counsel for the Provider Plaintiffs *about this litigation* are not relevant to the allegations at issue. Align is wrong.

SDC's requests to Align are more than relevant to SDC's defenses in the underlying

---

[3] Available at https://investor.aligntech.com/financial-information/annual-report (last visited 4/21/2021).
[4] As noted in SDC's opening brief [Doc. 1-2] at pp. 5-6, when Align was a supplier to and shareholder in SDC, and before an arbitrator found that Align breached its covenants with SDC and was ordered to close its direct-to-consumer stores permanently through 2022, Align sang a different tune. Accordingly, SDC needs all of the documents in Align's possession that bear on SDC's model in order to show that the claims that the Invisalign® providers are asserting in this case were at one time refuted by the very company with which they are affiliated.

- 3 -

9425656.1

action, Align is a central player in the *Ciccio* action, and Align has not even attempted to show that responding to the requests would pose an undue burden. Thus, SDC respectfully requests that this Court enter an order compelling Align to produce documents in response to the subpoena.[5]

1. **SDC'S SUBPOENA SEEKS DOCUMENTS RELEVANT TO THE PARTIES' CLAIMS AND DEFENSES IN THE *CICCIO* MATTER**

Align argues that "all of the [Provider Plaintiffs'] claims turn on whether SDC made false or misleading statements, and whether consumers relied on those statements." (Opp'n at 4.) This is true, but only partially. Align improperly relies on this fact to mischaracterize SDC's subpoena requests as irrelevant, when in fact the requests seek documents directly relevant to the allegations in the Provider Plaintiffs' First Amended Complaint ("FAC").

   A. **Align is Not Entitled to Heightened Protection**

Align's assertion that it is entitled to heightened protection as a nonparty fails under the circumstances of this case. (*See* Opp'n at 7.) In this District, the "heightened relevance standard" merely allows a court to engage in a balancing analysis. *Aquastar Pool Prods. Inc. v. Paramount Pool & Spa Sys.*, No. CV-19-00257-PHX-DWL, 2019 WL 250429, at *2–3 (D. Ariz. Jan. 17, 2019) (granting a motion to compel and finding that "[t]he proper way to afford this special consideration is to weigh the burden to the subpoenaed party against the value of the information to the serving party"); *see also Baker, Donelson, Bearman, Caldwell & Berkowitz PC v. NextCare Holdings Inc.*, No. CV-20-01000-PHX-GMS, 2020 WL 3826841, at *2 (D. Ariz. July 8, 2020) (citing *Aquastar* for the assertion that analysis of nonparty discovery requires a balancing test). SDC demonstrated in its Motion that Align possesses uniquely relevant documents for the claims and defenses in

---

[5] SDC notes that its response to Align's Motion to Transfer SDC's Motion to Enforce to the Middle District of Tennessee is not due until May 28, 2021. *See* Local Rule 7.2(c–d).

9425656.1

the Ciccio action. Consequently, the "balance" tips strongly in favor of compelling production.

Align fares worse in the Sixth Circuit, where it asks this matter transferred. Courts in that District apply a heightened relevance standard only when the requested information is invasive to the personal life of an individual. *See, e.g.*, *Muslim Cmty. Assoc. of Ann Arbor v. Pittsfield Twp.*, No. 12-cv-10803, 2014 WL 10319321, at *4 (E.D. Mich. July 2, 2014) (applying a heightened relevance standard because the subpoena sought private communications an individual had with her neighbors); *Fritz v. Charter Twp. of Comstock*, No. 1:07-CV-1254, 2010 WL 1856481, at *1 (W.D. Mich. May 10, 2010) ("When the subject of a discovery request is *personnel files*, it is appropriate for the Court to require a heightened showing of relevance and need.") (emphasis added); *Innovative Concept Grp., Inc. v. Food Sales of Tenn., Inc.*, No. 3:03-CV-549, 2005 WL 816233, at *1 (E.D. Tenn. Mar. 17, 2005) (denying a motion to quash on relevancy grounds involving direct competitors). But none of those concerns is present in this case. SDC's requests do not seek invasive personal information and Align is well positioned to provide the valuable information. Accordingly, "the test for 'relevance,' in the context of a Rule 45 subpoena to a non-party, is no different than the test under Rules 26 and 34." *Aquastar*, 2019 WL 250429, at *5.

Align's rebuke of SDC's individual reasons for relevancy likewise fall flat. (Opp'n at 13–15.) Align effectively asks the Court to ignore the actual allegations levied against SDC, and instead lump them into the limitless concept of "whether SDC's marketing was false or misleading." (*Id.* at 13.) But SDC's requests are specific, and targeted at the core subject matter of the allegations, including whether SDC's business constitutes the illegal practice of dentistry. (FAC ¶ 123.) Align's suggestion that SDC did not "provid[e] support or explain[] what issue the evidence sought 'is directly relevant' *to*" both ignores SDC's substantial pre-motion meet-and-confer efforts and contradicts Align's

- 5 -

admission that it "review[ed] the amended complaint." (Opp'n at 13; *id.* at 4.) Moreover, Align's gripes about SDC's relevance argument are insufficient for the following reasons:

- Align cannot credibly argue that comparison studies between Invisalign and SDC's aligners would not be relevant. The safety and efficacy of SDC's aligners are squarely at issue, and because any study would conclude that SDC's aligners are safe, effective, and comparable to Invisalign, those studies would undercut the Provider Plaintiffs' claims to the contrary.

- Communications between Align and the Provider Plaintiffs or their counsel are inherently related to *this litigation* and relevant to the claims and defenses at issue.

- Align asks whether in-person examination is even relevant to this litigation, yet the *very first sentence* of its Opposition pejoratively characterizes SDC as "a Direct-to-Consumer medical device company that provides clear aligners to patients without having a dentist or orthodontist examine the patient in person." (Opp'n at 1.) Align suggests alternative means of obtaining this kind of evidence, but it ignores that its perspective on the standard of care—both as a provider of clear aligners and a contracting party with some of the Provider Plaintiffs—is uniquely relevant to this dispute.

- Align ignores that Align itself challenged certain of SDC's marketing claims before the National Advertising Division ("NAD") – and lost – that the Provider Plaintiffs likewise challenge in this case, including statements about "bite correction"[6] (Amended Complaint at ¶¶ 107-112, 188), and SDC's refund policy (*id.* at ¶¶ 100-106); as well as NAD challenges mounted – and lost – by the American Association of Orthodontists ("AAO"), which has extensive ties to Align, regarding the efficacy and safety of SDC's teledentistry model (*id.* at ¶¶ 80, 85-88, 90-91, 93, 98-99).

- Align ignores its ties to the AAO and to the American Dental Association ("ADA"), trade organizations that have asserted specious accusations against SDC and to which, as more fully described *infra* p. 6, the Provider Plaintiffs themselves belong. The overlap between the Provider Plaintiffs, Align, the ADA, and the AAO is undeniable.

(*See* Opp'n at 13–14 (Align's "Reasons" Nos. 4, 6, 11, and 13).)

---

[6] *See* April 27, 2020 NAD press release (attached hereto as Exhibit 1). Note that SDC references these NAD proceedings, which are confidential, not for the truth of the matter asserted, but rather merely for the proposition that many of the Provider Plaintiff's claims mirror those made by Align and organizations with which Align has ties.

- 6 -

9425656.1

Align's facile arguments on relevancy wilt upon even a cursory examination of SDC's requests and the allegations in the Complaint. Align has asserted the same kinds of charges against SDC that are mimicked by its Invisalign® providers in this case. To defend itself in this litigation, therefore, SDC needs Align's documents to show that: (1) there is no medical, scientific or other factual bases for the shortcomings in SDC's clear aligner treatment alleged by the Provider Plaintiffs, Align, the ADA, and the AAO; (2) the aligner comparisons made by Align and the Provider Plaintiffs are without factual basis; (3) Align communicated with the ADA, the AAO, the Provider Plaintiffs themselves, and/or their attorneys about the very factual statements and issue that are at issue in the case; (4) the extent of Align's involvement with and influence on the regulatory actions that form the basis of the Provider Plaintiffs' claims; (5) Invisalign® providers are not adequate or representative class members; (6) the Provider Plaintiffs' lack the clean hands to recover damages; (7) the standard of care for an in-person visit and remote teledentistry are exactly the same; and (8) Align has been behind or involved with this litigation. For these and other reasons, the documents sought by SDC are relevant, and nothing in Align's Opposition effectively rebuts that.

### B. The Subpoena Requests Are Different From Requests Made to SDC

Align asserts that SDC has taken contradictory positions on the categories of requested documents by arguing that discovery *from SDC* on certain topics would be irrelevant, while the same discovery *from Align* is relevant. (Opp'n at 10.) But Align's overly simplistic view of the requests is wrong. Indeed, the requests to SDC and Align are fundamentally distinct because SDC's and Align's relationship to the underlying allegations are inherently different.

The Provider Plaintiffs' Amended Complaint incorporates actions taken by the AAO, the ADA and various state dental boards as support that SDC violated federal law or some undisclosed and undefined standard of care for teledentistry. (*See, e.g.*, FAC at

9425656.1

¶¶ 2(a), 2(c), 3, 89, 121, 123, 126, 166, 210(h), 216(h), 222(h), 229(h), 235(h), 241(h), 247(h), and 253(h).) This is not surprising, since all of the Provider Plaintiffs and their practices are *members* of the AAO and the ADA. Align's ties to the AAO (and we believe the ADA) are beyond dispute, and SDC believes that Align was involved, assisted and/or otherwise was consulted in connection with those actions. Accordingly, Align's communications with federal and state agencies—as well as with the ADA, AAO, and state dental boards—are relevant because those agencies' actions form the basis of much of the Provider Plaintiffs' allegations against SDC. The same cannot be said about SDC communications with similar agencies or boards. Thus, SDC is not "talking out of both sides of its mouth." (Opp'n at 10.) The fact that this type of discovery is relevant as to Align, but not relevant as to SDC, is consistent with a proper understanding of the allegations in the Provider Plaintiffs' Complaint.

### C. SDC Does Not Seek "Motive Discovery"

Align tries to avoid it obligations by mischaracterizing SDC's requests as "motive discovery." (*See* Opp'n at 11–12.) That is untrue, and Align offers no factual support for this assertion.[7] SDC does not seek discovery from Align for "motive discovery." If any of the Provider Plaintiffs benefitted from Align's coordinated efforts with the ADA, AAO, and other entities against SDC, then those Plaintiffs are benefitting from the very conduct that they allege harmed them. Put another way, Align's efforts to cast SDC in a false bad light is creating a benefit for the Provider Plaintiffs. The Provider Plaintiffs cannot turn around and claim to be harmed by those same falsehoods—for example, that SDC's

---

[7] This argument is especially far-fetched. SDC and Align are no strangers to litigation; each has sued the other on multiple occasions, and there are at least two pending cases now. If SDC wanted to sue Align, it could do (and has done so) without resorting to third-party discovery. And despite that there is pending litigation between the companies, SDC has not sought these documents before because they were not relevant. They are, however, relevant here.

- 8 -

9425656.1

aligners "violate[] the FD&C Act and involve[] the illegal practice of dentistry." (FAC at p.38, Section Heading H.)

SDC's requests to Align are directly related to the statements and omissions in the Provider Plaintiffs' Amended Complaint, and are necessary to SDC's defenses in the underlying actions, including its ability to attack alleged damages, causation, and the adequacy of class representatives. SDC's requests to Align have no relation to the Provider Plaintiffs' motive.

### 2. ALIGN HAS NOT DEMONSTRATED UNDUE BURDEN

Align rests its claim of undue burden on the lack of relevancy of SDC's requests. And despite its flat refusal to make any effort to quantify its purported burden, Align maintains that it is not estopped from complaining of its un-investigated "burden." Align is wrong on both counts. For the reasons shown above, SDC's requests are relevant. Thus, Align cannot predicate undue burden on a lack of relevance.

Similarly, Align cannot credibly show that SDC's requests impose an undue burden because Align has not taken a single step to determine what kind of burden the requests might actually impose. During the meet-and-confer call between the parties, SDC inquired as to what kind of searches Align had run to conclude the burden was too great, and SDC offered to work collaboratively with Align to reduce that burden. Align, however, had made no effort to comply with the subpoena whatsoever.

Finally, Align misconstrues the standard of Rule 45 discovery by stating that "even a minimal burden upon Align cannot be justified." (Opp'n at 16.) Such a "minimal burden" standard would eviscerate any practical use of Rule 45 discovery, and it is an incorrect statement of the law. "Whether a burden is undue requires weighing 'the likely relevance of the requested material . . . against the burden . . . of producing the material.'" *In re Smirman*, 267 F.R.D. 221, 223 (E.D. Mich. 2010) (citing *EEOC v. Ford Motor Credit Co.*, 25 F.3d 44, 47 (6th Cir. 1994)) (alteration in original). While courts "consider one's

9425656.1

status as a nonparty to be a significant factor in the undue-burden analysis," the nonparty seeking to quash a subpoena "still bears the burden of demonstrating that the discovery sought should not be permitted." *Sinclair v. Lauderdale Cty.*, No. 2:14-cv-02908-SHM-cgc, 2015 WL 1393423, at *3 (W.D. Tenn. Mar. 24, 2015) (internal citations omitted). If a moving party does not offer any "alternatives that might enable some degree of production," this can be a factor in denying a motion to quash based on claims of undue burden. *Abundes v. Athens Food Servs.*, No. 3:14-1278, 2015 WL 13664280, at *2 n.4 (M.D. Tenn. Sept. 18, 2015).

Align cites *Free Stream Media* for a proposition that the decision does not support. The *Free Stream* court did not find that "even a minimal burden" could support a motion to quash. *See Free Stream Media Corp. v. Alphonso Inc.*, No. 17-cv-02107-RS (KAW), 2017 WL 6209309, at *5 (N.D. Cal. Dec. 8, 2017) (cited Opp'n at 16). Rather, the court ruled that the subpoena in question was unduly burdensome because the plaintiff had failed "to explain the relevance of the information sought or why they need the information." *Id*. Additionally, "the original scope and time period [of the subpoena] were unlimited," which contributed to the undue burden on the third-party respondent. *Id*. And the respondent had already spent more than $50,000 complying with the subpoena. *Id.* at *6. Here, SDC has demonstrated the relevance of its requests to Align and—apart from this unnecessary and self-inflicted motion practice caused by Align's refusal to comply with the subpoena—Align has incurred no burden to date.

**3. CONCLUSION**

Align wants the Court to take a deliberately uninformed view of the allegations in the Provider Plaintiffs' Complaint and absolve it of any obligation to respond to reasonable discovery. For the foregoing reasons, and for the reasons described in SDC's Motion, SDC asks that the Court not do so, and instead order Align to comply with the subpoena and produce responsive documents.

- 10 -

9425656.1

DATED this 21st day of May, 2021.

JONES, SKELTON & HOCHULI P.L.C.

By/s/ Jeremy C. Johnson
Jeremy C. Johnson
40 N. Central Avenue, Suite 2700
Phoenix, Arizona 85004
Attorneys for Plaintiff SmileDirectClub, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May, 2021, I caused the foregoing document to be filed electronically with the Clerk of Court through the CM/ECF System for filing; and served on counsel of record via the Court's CM/ECF system.

/s/ Kelli Huddleston

9425656.1